# UNITED STATES DISTRICT COURT

## District of Kansas

### (Kansas City Docket)

UNITED STATES OF AMERICA,

          Plaintiff,

          v.               CASE NO.: <u>17-20026-CM</u>

JEFFREY PLANK,

          Defendant.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
### (Doc. 51)

---

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and respectfully submit the following in response to the defendant's motion for compassionate release:

The defendant moves this Court for an immediate order of compassionate release for extraordinary and compelling reasons, namely, the significant risk of COVID-19 on his overall health. (Doc. 51, Mot. for Compassionate Release

at 1-26.)[1]  The government objects to the defendant's motion and maintains that relief if unwarranted in this instance.

## I.    PROCEDURAL HISTORY

On June 9, 2017, a grand jury sitting in Kansas City, Kansas issued a one count indictment charging the defendant with possessing 50 grams or more of methamphetamine with the intent to distribute the same.   (Doc. 1, Indt. at 1-2.)

On March 8, 2018, the defendant entered a guilty plea—without an agreement with the government—to the sole count in the indictment.   (Doc. 32, Plea Pet. at 1-7.)

In anticipation of sentencing, a presentence investigation report (PSIR) was drafted using the 2016 Guidelines Manual.    (Doc. 45, PSIR at 1-45.)   The defendant was held accountable for 6.24 grams of "Ice," resulting in a base offense level of 38.    (*Id*. at 7, ¶ 28.)   A 2-level enhancement was applied under Section 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance, resulting in an adjusted offense level of 40.    (*Id*. at 7-8, ¶¶ 29-33.)   After applying the appropriate reductions under Section 3E1.1, the

---

[1] It should be noted up front that the defendant tested positive for COVID-19 on May 21, 2020.

defendant's total offense level was calculated at 37.   (*Id*. at 8, ¶¶ 35-37.)   The defendant's criminal history category was calculated at I, resulting in a guideline range of imprisonment of 210-262 months.   (*Id*. at 13, ¶ 68.)

On March 27, 2019—and based on a joint agreement by the parties for a sentence below the guideline range, (Doc. 49, Statement of Reasons at 3, ¶ VI(B)(2))—the defendant was sentenced to a controlling term of imprisonment of 144 months.   (Doc. 48, Judgment at 2.)   The defendant's projected release date from the United States Bureau of Prisons is April 27, 2029.

## II.   ARGUMENT

The defendant is burdened with demonstrating that circumstances exist warranting this Court's consideration of compassionate release.   *See United States v. Rodriguez-Orejuela*, --- F.Supp.3d ---, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) (noting that under the CARES Act / Section 3582(c) framework the defendant bears the burden of establishing that compassionate release is warranted); *United States v. Holden*, --- F.Supp.3d ---, 2020 WL 1673440, at *3 (D. Ore. Apr. 6, 2020) (noting that "[a] defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release."); *United States v.*

*Epstein*, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (Slip Op.) ("Simply put, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release.").

Here, the defendant falls short of satisfying the requirements for compassionate release under 3582(c)(1)(A)(i).   Thus, for the following reasons, this Court must overrule his motion and deny the requested relief at this time.

A.   BOP's Response to the COVID-19 Pandemic

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time resulting in disruption to our society and economy.   In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

As of this pleading, BOP has 134,522 federal inmates in BOP-managed institutions and 12,788 in community-based facilities. The BOP staff complement is approximately 36,000.   There are **2068 federal inmates** and **185 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **3957 inmates** and **452 staff** have recovered.   There have been **78**

4

**federal inmate deaths** and **1 BOP staff member death** attributed to COVID-19 disease.[2]

The current modified operations plan is stated in full at https://www.bop.gov/coronavirus/covid19_status.jsp.   Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution.   BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead.   But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations.   For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public.   It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.   It must marshal its resources to care for inmates in the most efficient and beneficial manner possible.   It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in

_____

[2] https://www.bop.gov/coronavirus/ (last visited 9 June 2020).

these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

      B.   <u>Legal Framework</u>

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his behalf pursuant to Section 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, as it has been here, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and

(ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).   Again, as the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction.   *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under Section 3582(c)(1)(A).   As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement."   U.S.S.G. § 1B1.13.[3]

---

[3] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under Section 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the government submits that the policy statement applies to motions filed by defendants as well.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

C.   Lack of Extraordinary and Compelling Reasons

In the present case, the defendant's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release.   As explained above, under the relevant provision of Section 3582(c), a court can grant a sentence reduction *only* if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A)(i).   The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, the defendant first must establish that his condition(s) fall(s) within one of the categories listed in the policy statement.   Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."   U.S.S.G. 1B1.13, cmt. n.1(A).   If a defendant's medical condition does not fall within

9

one of the categories specified in the application note (and no other part of the application note applies), his motion must be denied.   The defendant fails to meet the established criteria.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction.   The categories encompass specific serious medical conditions afflicting an individual inmate, *not* generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) (Slip Op.) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[4]   To classify COVID-19 as an extraordinary and

---

[4] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors);

compelling reason would not only be inconsistent with the text of the statute

and the policy statement, but would be detrimental to BOP's organized and

comprehensive anti-COVID-19 regimens, could result in the scattershot

treatment of inmates, and would undercut the strict criteria BOP employs to

determine individual inmates' eligibility for sentence reductions and home

confinement.   Section 3582(c)(1)(A) contemplates sentence reductions for

specific individuals, *not* the widespread prophylactic release of inmates and the

---

*United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020); *United States v. Fuentes*, 2020 WL 1937398 (E.D. Cal. Apr. 22, 2020); *United States v. Singh*, 2020 WL 1937437 (E.D. Cal. Apr. 22, 2020) (62-year-old with no ailments); *United States v. Spruill*, 2020 WL 2113621, at *4-5 (D. Conn. May 4, 2020); *United States v. Harris*, 2020 WL 1969951 (M.D. Fla. Apr. 24, 2020); *United States v. Garcia*, 2020 WL 2039227 (C.D. Ill. Apr. 28, 2020) (the court broadly holds that the risk of infection to an inmate is not a circumstance within § 1B1.13, which is binding); *United States v. Wright*, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."); *United States v. Hiller*, 2020 WL 2041673 (D. Md. Apr. 28, 2020) (being over age 65 insufficient); *United States v. Espinal*, 2020 WL 2092484 (E.D.N.Y. May 1, 2020); *United States v. Hood*, 2020 WL 2091070 (W.D.N.C. Apr. 30, 2020); *United States v. Stanard*, 2020 WL 2219478, at *4 (W.D. Wash. May 7, 2020) (not justified by "the mere elevated risk of contracting a pandemic virus in prison, even if such a higher risk exists.") (citation omitted); *United States v. Pao Xiong*, 2020 WL 2042776 (E.D. Wis. Apr. 28, 2020).

modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A).   If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[5] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.   U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he is released than if he remains incarcerated.   That will typically depend on the inmate's proposed release plan and whether a known outbreak has occurred at

---

[5]  *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified Apr. 2, 2020).

his institution. As of the date of this response, Forrest City Low, FCI has documented 511 positive cases of COVID-19 amongst the inmates, with 1 positive case amongst staff members. There have been no inmate or staff deaths at the facility related to COVID-19.

In this case, Defendant asserts that he suffers from a combination of serious health ailments, namely, age, obesity, sleep apnea, congestive heart failure, Type II diabetes, obesity and COPD. (Doc. 51, Mot. for Release at 1-3.) As a consequence of these medical conditions, the defendant maintains that his chances of hospitalization, intensity (sic) care, or death are greatly increased in light of the pandemic. (*Id*. at 2.) The defendant moves this Court to re-sentence him to time-served and subsequently release him to home-confinement for a period of 5 years at a residence in Gardner, Kansas. (*Id*. at 19, 21, and 24.) This release plan has not been approved either by BOP or United States Probation. He further suggests that this Court extend his supervised release to ten years. *Id*. at 21.

The defendant unquestionably suffers from a number of medical issues. However, each condition is being properly addressed by BOP without any further significant worsening or inability by the defendant to properly care for himself. In short, the defendant does not suffer from a terminal illness, or any

"serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."   U.S.S.G. 1B1.13, cmt. n.1(A).

And, it appears as of this pleading that the defendant's positive test result for COVID-19 has had no impact on his overall health.   Indeed, as late as June 2, the defendant remains asymptomatic and has complained of no typical symptoms associated with COVID-19.   Thus, putting this case in context, the defendant is seeking release because of a medical condition that is being properly treated by BOP and which has had no impact by a positive COVID-19 result. That request should be denied.

Finally, application of the Section 3553(a) factors warrants against a significant reduction in the defendant's sentence.   The defendant has only completed approximately 25% of his sentence, and a sentence of time-served would be unjust under the circumstances.

For these reasons, the defendant has failed to establish an "extraordinary and compelling reason" for emergency release under Section 3582(c).   The motion should therefore be denied.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney
District of Kansas


By: _____/s/ _Jared S. Maag_____

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney
290 Carlson Federal Bldg.
444 SE Quincy St.
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov


# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2020, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system, and that a copy of this filing will be electronically delivered to:

David M. Magariel
Office of Federal Public Defender - KCK
500 State Avenue, Suite 201
Kansas City, KS 66101-2400
913-825-6922
Email: david_magariel@fd.org

By: _____/s/ _Jared S. Maag_____

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney

15