IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-20026-JWL |
| | ) | |
| JEFFREY PLANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582 (Doc. # 51).  For the reasons set forth below, the Court **grants** the motion.  The Court reduces defendant's sentence to time served, extends defendant's period of supervised release to ten years, and imposes the additional restriction that the first five years of supervised release include home confinement.


### I.   Procedural History

On March 8, 2018, defendant pleaded guilty, without an agreement, to one count of possessing with intent to distribute 50 grams or more of methamphetamine.  The parties reached a sentencing agreement under which they jointly recommended a term of imprisonment of 144 months.  On March 27, 2019, the Court followed the recommendation and sentenced defendant to a term of 144 months, followed by five years of supervised

release. Defendant is incarcerated at FCI Forrest City Low, and his present projected release date is April 27, 2029. On May 22, 2020, defendant filed the instant motion through his appointed counsel.[1]

## II.  Analysis

Defendant seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A). That statute allows a defendant to bring a motion for reduction of a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See id.* The Government originally filed a response in which it argued that defendant had not met this requirement because he did not fully appeal his warden's denial of his request for relief. The Government did not address the alternative prong of this requirement, however, and the Government subsequently withdrew this argument. In fact, because defendant filed his motion more than 30 days after submitting his request to the warden, he has satisfied the exhaustion requirement, and the Court has jurisdiction to consider the motion on its merits.

The moving defendant bears the burden of establishing that "compassionate release" is warranted under Section 3582(c)(1)(A), and a court exercises its discretion in ruling on such a motion. *See United States v. Jackson*, 2020 WL 2812764, at *2 (D. Kan. May 29, 2020) (Lungstrum, J.) (citing cases).

---

[1] This case was reassigned to the undersigned judge on May 27, 2020.

Section 3582(c)(1)(A) provides that a court may reduce a sentence if it finds, after considering applicable factors from Section 3553(a), that (a) extraordinary and compelling reasons warrant the reduction and (b) the reduction is consistent with the applicable policy statement issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A). To address this statutory provision, the Sentencing Commission promulgated the policy statement found at U.S.S.G. § 1B1.13, which adds the requirement that the defendant not be a danger to the safety of another person or the community. *See id.* In addition, in Application Note 1 to the statement, the Commission set forth four circumstances (in subdivisions (A) through (D)) under which "extraordinary and compelling reasons" may exist. *See id.* applic. note 1. In this case, defendant invokes subdivision (D), known as the "catchall" provision, which provides as follows:

> **(D) Other Reasons. –** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*See id.* Subdivision (D) thus provides that circumstances other than those listed in subdivisions (A) through (C) may be sufficient to warrant relief, as determined by the Bureau of Prisons (BOP). The BOP has made no such determination in this case. Nevertheless, as this Court has previously determined, in accordance with the weight of authority, the Court is not limited to circumstances (A) through (C), and it may exercise its own discretion to determine whether other extraordinary and compelling reasons warrant relief under the statute. *See Jackson*, 2020 WL 2812764, at *3.

Defendant argues that extraordinary and compelling reasons for immediate release from prison exist because his medical condition and the conditions of his confinement create a very high risk of serious harm or death from the ongoing coronavirus pandemic. Defendant tested positive for the virus on May 21, 2020.  Defendant requests a reduction of his sentence to time served, and he proposes that his period of supervised release be lengthened to ten years, with the restriction added that the first five years include home confinement.

The Government opposes the motion.  It argues that the statute contemplates relief based on individual circumstances, and that the pandemic in itself is not a sufficient ground for general relief for the prison population.  It also cites the general measures that the BOP has taken to address the virus in its facilities, although it has not discussed any measures or conditions specific to defendant's facility, Forrest City Low.  The Government concedes that an inmate's high-risk medical condition could provide an extraordinary and compelling reason for relief under this statute, although it also argues that the risk to the inmate should be weighed against the likelihood of harm from the virus upon release, based on the proposed plan after release and the conditions at the inmate's facility.  The Government concedes that defendant suffers from conditions that create the highest risk from the virus, but it argues that those conditions are being "properly addressed by BOP." It notes that defendant is presently asymptomatic, despite his positive test, and that defendant has served only 25 percent of his sentence.

The Court concludes in its discretion, for the reasons set forth below, that extraordinary and compelling reasons do exist here to reduce defendant's sentence to effect

his release from prison, given the elevated risk of harm from the virus created by his medical condition and the outbreak and conditions at his prison facility.  The Court therefore will grant defendant the relief requested.

First, defendant has established that he suffers from medical conditions that place him in the highest risk category with respect to the COVID-19 coronavirus.  Defendant is 54 years of age.  Measured by his weight and body mass index, defendant is severely obese. Defendant has suffered multiple heart attacks, and he has been diagnosed with congestive heart failure (nonischemic cardiomyopathy), with his heart operating at 25 to 30 percent capacity.  He also has Type II diabetes, sleep apnea, and Chronic Obstructive Pulmonary Disease (COPD).  These conditions place defendant at the highest risk of serious harm from the coronavirus, especially because of the potential for respiratory distress, and the CDC has recognized that these specific conditions increase the risk from the virus, particularly in combination.  The Government does not dispute that defendant suffers from these conditions or that he falls within the highest risk category as a result.  Moreover, defendant has already tested positive for the virus.

The Government argues that because defendant's conditions have been "addressed" at the prison, he is still able to "provide self-care," and thus his condition does not satisfy circumstance (A) from the note to Guideline Section 1B1.13.  Defendant need not have already become incapacitated from the virus, however, as it is the high risk of harm that provides the extraordinary and compelling reason in this case.  Moreover, as discussed above, defendant's condition need not satisfy circumstance (A), as the Court may find other

extraordinary and compelling reasons warranting relief under subdivision (D)'s catchall provision.

Defendant's situation is especially dire in light of the outbreak of the virus at his prison facility. According to the coronavirus page of the BOP's website, of Forrest City Low's 1928 inmates, 26 are "positive" and 660 are "recovered". Thus, by that count, over one-third of the population has been infected, despite the BOP's measures to address the virus. Moreover, as defendant points out, those numbers may be low, as there is no indication that all inmates have been tested. Indeed, the Government has not indicated how many tests have been administered at Forrest City Low or what percentage of tests have come back positive. Defendant also cites issues that have been found with the accuracy of the particular tests used by the BOP. Defendant further argues that the conditions at the facility do not allow for continual social distancing. The Government does not dispute these numbers or address the testing issue; in fact, the Government does not discuss the conditions at this specific facility or particular measures taken there. Nor has the Government identified any particular measures implemented to safeguard defendant after his positive test. In addition, the risk to defendant remains, as it has not been established that a person becomes completely immune to the virus after infection. The Government does not dispute that Forrest City Low is, in the words of the BOP Director, a "hotspot" for the virus. That outbreak suggests that the BOP's preventative measures have not been successful at that facility, and the risk of infection to defendant has been realized in the form of a positive test. This combination of defendant's condition, which gives him a particularly high risk of serious harm from the virus, and the especially severe outbreak at

the facility, where measures to contain the virus have been ineffective, provides an extraordinary and compelling reason for relief in this case.

As defendant notes, although the BOP could effect a temporary release to home confinement (but has declined to do so in this case), this Court has no authority to do so. *See United States v. Delgado*, __ F. Supp. 3d __, 2020 WL 2464685, at *6 (D. Conn. Apr. 30, 2020) (noting that the preferable solution of a temporary release during the coronavirus pandemic was available only to BOP, not to the court, which therefore reduced the defendant's sentence to time served). Accordingly, defendant has proposed a release plan that provides for a total of ten years of supervised release with home confinement as a condition for the first five years.[2] As defendant notes, if he were to violate any condition of supervised release (including the home confinement condition), his supervised release could be revoked and he could be sentenced to a prison term of five years.

The Government argues that the Court should weigh a defendant's risk while incarcerated against the likelihood of harm from the virus if released, which consideration

---

[2] The Court may impose as a condition of supervised release that a defendant "remain at his place of residence during nonworking hours and, if the court finds it appropriate, that compliance with this condition be monitored by telephonic or electronic signaling devices," if the condition is imposed "as an alternative to incarceration." *See* 18 U.S.C. §§ 3583(d)(3), 3583(e)(4), 3563(b)(19). In this case, this condition would be imposed as an alternative to defendant's continued incarceration. The Court is also authorized to extend a term of supervised release. *See id.* § 3583(e)(2); *see also United States v. Begay*, 631 F.3d 1168, 1172 (10th Cir. 2011) (no findings are required for modification of a term of supervised release). The Government has not disputed that the Court may modify defendant's term and conditions of supervised release in this manner. Compliance with Fed. R. Crim. P. 32.1 is required, *see Begay*, 631 F.3d at 1172, but because defendant is being granted the relief requested in the motion, the Court considers defendant to have waived the right to a hearing concerning the modification of the term of supervised release. *See* Fed. R. Crim. P. 32.1(c).

depends on conditions at the defendant's facility and the defendant's plan for release.  It is not clear, however, whether the Government argues that this balancing weighs against release here, as the Government has not criticized defendant's plan and has not addressed the particular conditions at Forrest City Low.  As discussed above, that facility is a hotspot for the virus with at least a third of the population having been infected.  The Court has little doubt that the risk for defendant is far greater on the inside than on the outside.  It is true that defendant's present sentence is longer than the term of home confinement proposed by defendant (although as defendant points out, various credits could move up his release date by a year or more).  The Court concludes, however, that defendant's plan is reasonable and represents the best solution available to the Court to safeguard his health.  Again, the Government has not taken issue with any element of that plan.

The policy statement in Guideline Section 1B1.13 requires that defendant not be a danger to the safety of another person or the community, and the Court finds that this requirement is satisfied in this case.  The Government does not argue that defendant's release presents any danger.  Defendant is presently in a low-security facility, he has no known history of violence, and neither his present offense nor his previous offenses involved the use of any weapons.  Most significantly, defendant was released to home confinement for almost a year between his plea and his sentencing so that he could care for his mother, and no issues arose during that period.

Finally, the applicable Section 3553(a) factors do not compel a contrary conclusion.  At sentencing, defendant qualified for a criminal history category of I.  The parties disputed the proper guideline range for defendant's offense, and thus they reached an agreement on

8

sentencing.  The Government notes that defendant has served only 25 percent of that agreed term (although as noted above, defendant's release date could be much earlier).  The higher range in the presentence report was driven largely by the use of the much-harsher "ice" methamphetamine table instead of the table for a methamphetamine mixture, however, and the Government agreed to recommend a lower sentence after defendant argued that a guidelines sentence would disproportionately punish defendant, a street-level dealer. Defendant is not simply being relieved of the remainder of his sentence, but must comply with home confinement.  Any remaining disparity between defendant's modified sentence and that received by similar offenders is outweighed in this case by the risk to defendant from continued incarceration.

In summary, defendant falls within the highest category of risk of serious harm from the ongoing pandemic; that risk is especially high at defendant's facility; defendant has proposed a reasonable plan for release to home confinement; and defendant is a non-violent offender who has demonstrated his ability to comply with such a condition of release. These facts distinguish the present case from others in which the high bar for compassionate release has not been deemed cleared.  The Court therefore concludes in its discretion that extraordinary and compelling reasons warrant the reduction of defendant's sentence to time served pursuant to Section 3582(c)(1)(A), and defendant's motion is hereby granted.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582 (Doc. # 51) is hereby **granted**.  The Court reduces defendant's sentence to time served.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's period of supervised release is hereby extended to a total period of ten years.  All previously-imposed terms and conditions of defendant's supervised release remain in effect.

IT IS FURTHER ORDERED THAT the Court imposes the following additional condition for defendant's period of supervised release:  Defendant shall be placed on home detention for a period of five (5) years, to commence within ten (10) business days.  During this time, defendant shall remain at his place of residence except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the U.S. Probation Officer.  Defendant shall be required to wear a location monitoring device, which will include Radio Frequency, Global Positioning System and/or Random Tracking at the discretion of the probation officer, and defendant shall abide by all technology requirements.  Defendant shall follow all location monitoring procedures specified by the probation officer, and defendant must contribute toward the cost, to the extent that he is financially able to do so, as directed by the Court or the probation officer.

IT IS SO ORDERED.

Dated this 2nd day of July, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge